UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
(FT. MYERS DIVISION)

TRANSPORTATION ALLIANCE BANK,
INC.,

      Plaintiff,

v.

PEEWEE'S HAULING, INC., a Florida for
profit corporation; PEEWEE'S SERVICES
CORP., a Florida for profit corporation;
MARLOWE F. VARGAS; and SHANNON
GEORGE,

      Defendants.
_____/

CASE NO.: 2:18-cv-00499-UA-MRM

## PLAINTIFF TRANSPORTATION ALLIANCE BANK, INC.'S EX PARTE AND EMERGENCY MOTION FOR PREJUDGMENT WRIT OF REPLEVIN

Plaintiff TRANSPORTATION ALLIANCE BANK, INC. ("TAB") moves, ex parte, for an emergency prejudgment writ of replevin under Fed. R. Civ. P. 64. and Fla. Stat. § 78.068. The sworn facts are set forth in the Affidavit of Benjamin J. Kotter, General Counsel for Transportation Alliance Bank, Inc. ("Affidavit") which is attached hereto as **Exhibit 1.**

### PREFATORY STATEMENTS

1.    TAB has a legal right to a replevin.

2.    Emergency prejudgment relief is warranted because although done clumsily and ineffectively, the Defendants named in this action have been trying to remove the asset subject to this litigation from out of reach of the law. Were Defendants to get lucky and correctively transfer the asset to a bona fide third party purchaser, TAB would be left without a remedy.

1

## BACKGROUND

**A.     THE LOAN DOCUMENTS**

On March 3, 2016, Defendant Peewee's Hauling, Inc. ("PHI") executed a Promissory Note ("Note") in the amount of $193,661.00 in favor of TAB. Defendant Shannon George ("George") signed the Note as President of PHI. *See* Affidavit ¶ 3. Pursuant to the terms of the Note, PHI agreed to repay the $193,661.00 lent by TAB in 59 monthly payments of $3,914.86, exclusive of interest. *See* Affidavit ¶ 4. The Note is secured by a Commercial Security Agreement ("Agreement") dated March 3, 2016, which grants TAB a security interest in a 2016 Mack GU713 Tractor, Vin No. 1M2AX04C4GM028158 (the "Collateral"). George signed the Agreement as President of PHI. *See* Affidavit ¶ 5. Importantly, in connection with the Loan, and as a material inducement for TAB to extend credit to PHI, PHI agreed to register TAB's security interest as a lien on the Florida title to the Collateral once it acquired said title. *See* Affidavit ¶ 9.

On March 3, 2016, PHI executed a Business Loan Agreement ("Business Agreement"), wherein PHI reaffirmed the terms of the Note and Agreement. George signed the Business Agreement as President of PHI. *See* Affidavit ¶ 6. The Note, Agreement, and Business Agreement are herein referred to as the "Loan." On March 3, 2016, PHI executed a Power of Attorney ("POA"), authorizing TAB as its lawful attorney-in-fact to act for PHI in applying for an original or duplicate certificate of title, to register, transfer title, or record a lien to the Collateral. George signed the POA as President of PHI. *See* Affidavit ¶ 7. As a material inducement for TAB to extend credit to PHI, George executed a Commercial Guaranty to TAB. *See* Affidavit ¶ 8. The Note, Agreement, Business Agreement, and Commercial Guaranty are herein referred to as the "Loan Documents."

The Manufacturer's Certificate of Origin for the Collateral was originally issued to Nuss Truck Group, Inc. ("Nuss"). *See* Affidavit ¶ 9. The Collateral was to be purchased by PHI from Nuss. *See* Affidavit ¶ 9. TAB was listed as the "Lienholder" in the form executed by Nuss transferring title to PHI (the "Original Transfer Form"). *See* Affidavit ¶ 9.

**B.    PHI APPLIES FOR CERTIFICATE OF TITLE**

On July 20, 2017, PHI filed a form HSMV 82040: Application for Certificate of Title With/Without Registration ("PHI Form 82040") seeking a certificate of title with the Florida Department of Highway Safety and Motor Vehicles for the Collateral. A copy of PHI Form 82040 is attached as **Exhibit 2.** Included in PHI Form 82040 were specific text boxes under the heading "Lienholder Information" wherein PHI legally and contractually was required to disclose any lienholder's name who had a lien interest in the Collateral, including "Date of Lien," "Lienholder's Name," "Lienholder's Email Address," and "Lienholder's Address." *See* Exhibit 2. However, PHI failed to include TAB's information in these text boxes and instead left the boxes entirely blank. *See* Exhibit 2, p. 1.

Defendant Marlowe Vargas ("Vargas"), who executed PHI Form 82040 on behalf of PHI, did so "[u]nder penalty of perjury…that the facts stated in it are true." *See* Exhibit 2, p. 2. Thereafter, on July 20, 2017, A Certificate of Title was issued in the name of PHI for the Collateral without naming TAB as a lienholder. A copy of the Certificate of Title is attached hereto as **Exhibit 3.**

As a result of PHI's false statement contained in PHI Form 82040 that there was no lien encumbering the Collateral, the Certified of Title states "NONE" under the "1st Lienholder" heading. *See* Exhibit 3. However, TAB's name should have been included under the "1st Lienholder" heading in the Certificate of Title. *See* Affidavit ¶ 10.

3

C.   **The Attempted Fraudulent Transfer Of The Collateral**

On or about July 28, 2017, Peewee's Services Corp. ("PSC") was registered as a corporation with the State of Florida. A copy of the Florida Department of State Detail for PSC is attached hereto as **Exhibit 4.** PHI and PSC share the same principal address and mailing address. A copy of PHI's Florida Department of State Detail is attached hereto as **Exhibit 5.** Vargas, the current President of PHI, is the Chief Financial Officer of PSC, and was the President of PHI on July 28, 2017. *Compare* Exhibit 4 to Exhibit 5.

Based on TAB's research, PHI transferred title to PSC without including TAB's lien information on the form effectuating the title transfer, placing the Collateral in danger of destruction, concealment, removal from the state, or removal from the jurisdiction of the court. *See* Affidavit ¶ 11. On or about August 2, 2017, without notice to TAB or its counsel, PHI transferred or sold the Collateral in a non arms-length transaction to PSC. In connection with this transfer, on August 2, 2017, PSC filed a form HSMV 82040: Application for Certificate of Title With/Without Registration ("PSC Form 82040") seeking a certificate of title with the Florida Department of Highway Safety and Motor Vehicles for the Collateral. A copy of PSC Form 82040 is attached as **Exhibit 6.**

Included in PSC Form 82040 were specific text boxes under the heading "Lienholder Information" wherein PSC was required to disclose any lienholder's name who had a lien interest in the Collateral, including "Date of Lien," "Lienholder's Name," "Lienholder's Email Address," and "Lienholder's Address." *See* Exhibit 6. However, PSC failed to include TAB's information in these text boxes and instead left them entirely blank. *See* Exhibit 6, p. 1.

Vargas executed PSC Form 82040 on behalf of PSC "[u]nder penalty of perjury…that the facts stated in it are true." *See* Exhibit 6. Vargas, who executed PSC Form 82040 on behalf of

4

PSC, was the same individual who executed PHI Form 82040 on behalf of PHI 82040. *Compare* signature located on PHI Form 82040 (Exhibit 3, p. 2) and signature located on PSC Form 82040 (Exhibit 6, p. 2). However, at this time, Vargas was the Chief Executive Officer PSC and President of PHI. Therefore, at the time that PSC submitted PSC Form 82040, PSC was aware that TAB had a lien interest in the Collateral.

Thereafter, on or near August 2, 2017, PHI signed over the Certificate of Title (which did not list TAB as a lienholder) to PSC. *See* Exhibit 3, specifically the bottom of the Certificate of Title under "Transfer of Title" heading. Vargas, who was individual who executed this Transfer of Title, was the same individual who executed both the PHI Form 82040 *and* the PSC Form 82040. PHI and Vargas were aware that the facts stated in the Certificate of Title were not true – specifically, that TAB should have been included as the "1st Lienholder."[1]

It is abundantly clear that PHI and Vargas transferred the Collateral to PSC in an effort to avoid repayment of the Loan and to try to move the Collateral away from the claims of TAB. TAB is now concerned that the Collateral is in danger of PSC transferring it to an innocent purchaser during the pendency of this action. *See* Affidavit, ¶ 12.

### D.  THE DEFAULT

PHI is in default under the terms of the Loan by, without limitation, failing to make payments due under the terms of the Loan, transferring title to the Collateral to PSC without TAB's authorization, and otherwise failing to perform the obligations under the Loan and Loan Documents. *See* Affidavit ¶ 13. Specifically, the last payment received by TAB from PHI was on December 4, 2017. *See* Affidavit ¶ 14. TAB has not received a payment under the Loan, from any party, since this date. *See* Affidavit ¶ 14. Moreover, George is in default under the

---

[1] Vargas executed this document "under penalty of perjury…that the facts stated in it are true." See Exhibit 3.

5

terms of the Commercial Guaranty as a result of her failure to guaranty the debts and obligations of PHI. *See* Affidavit ¶ 15.

Pursuant to the terms of the Loan Documents, PHI and George owe TAB, jointly and severally, an approximate principal amount of $168,202.48, together with interest and charges, and the costs associated with this action, including without limitation, attorney's fees and court costs. *See* Affidavit ¶ 16.

## MEMORANDUM OF LAW

A prejudgment writ of replevin should be issued by the Court without notice under both Fed. R. Civ. P. 64 and Florida Statute § 78.068, so that TAB can gain possession of the Collateral securing its loan, which is currently in payment default, before Collateral is sold to innocent purchasers. Fed. R. Civ. P. 64 states as follows:[2]

> At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it exists.

To be entitled to an ex-parte prejudgment writ of replevin under Florida law, specific facts to be stated in either a verified complaint, or separate affidavit, see § 78.068(1), showing the following:

> [T]he defendant is engaging in, or is about to engage in, conduct that may place the claimed property in danger of destruction, concealment, waste, removal from the state, removal from the jurisdiction of the court, or transfer to an innocent purchaser during the pendency of the action or that the defendant has failed to make payment as agreed.

§ 78.068(2), Fla. Stat. Those requirements are met in this case not only because Collateral —the "claimed property"— is in danger of being transferred to innocent purchasers during the

---

[2] *See Charter School Capital, Inc. v. N.E.W. Generation Preparatory High School of Performing Arts, Inc.*, 2015 WL 2239061 (S.D. Fla. 2015); *Textron Financial Corp. v. Unique Marine, Inc.* 2008 WL 4716965 (S.D. Fla. 2008).

pendency of this action, *and* PHI has transferred the property (albeit fraudulently) to PSC, but also because TAB has defaulted on its loan by failing to make payment. *See* § 78.068(2), Fla. Stat.

In fact, either of these facts alone—the risk of losing the secured property or the payment default—would be sufficient grounds for issuing a prejudgment writ without notice. *Id.* ("prejudgment writ of replevin may issue if the court finds … that the defendant has failed to make payment as agreed"); *see also Gazil, Inc. v. Super Food Servs., Inc.*, 356 So. 2d 312, 313 (Fla. 1978) (rejecting argument that payment default, by itself, was an illegitimate ground for replevin). The risk of losing the secured property in this case is especially probable because it consists of inherently "movable and transitory" property: automobiles. *Advantage Car Rental & Sales, Inc. v. Mitsubishi Motor Sales of Am., Inc.*, 664 So. 2d 46, 47 (Fla. 3d DCA 1995) (finding property "in danger of removal" solely because it consisted of automobiles).

Moreover, the nature of the claim (breach of contract secured by the Collateral), the amount owed (in excess of $168,000), and the grounds for issuance (the fraudulent transfer of the Collateral despite the breach of contract and security agreement)—all clearly appear from the specific facts stated in the Affidavit. These are the most basic requirements set forth in § 78.068(1).

TAB is also prepared to post a bond, in accordance with § 78.068(3), for twice the approximate value of the Collateral balance remaining due and owing (which is less than balance due and owing under the Loan) so that TAB can obtain a prejudgment replevin at an ex parte hearing. *McMurrain v. Fason*, 573 So. 2d 915, 917 (Fla. 1st DCA 1990) (illustrating the use of an ex parte hearing to obtain an order for the issuance of a prejudgment writ of replevin).

7

Once TAB posts the appropriate bond, an order directing issuance of the writ must be entered based on the specific facts stated in the Affidavit. *Comcoa, Inc. v. Coe*, 587 So. 2d 474, 478–79 (Fla. 3d DCA 1991) (holding that upon satisfaction of statutory prerequisites for a writ of replevin without notice, trial court was mandatorily required to issue the writ, and mandamus may be employed to require trial court to do so.)

A proposed order for issuing the writ is attached hereto as **Exhibit 7**, and proposed writ is attached as **Exhibit 8**.

**WHEREFORE**, Plaintiff requests the issuance of a prejudgment writ of replevin giving Plaintiff the right to immediate possession of the Collateral described in paragraph 5 of the Affidavit, together with attorneys' fees and costs, and any other or further relief the Court may deem necessary or appropriate.

Dated this 9th day of August, 2018.

        Respectfully submitted,

        McGLINCHEY STAFFORD

        /s/Manuel Farach
        Manuel Farach, Florida Bar No. 612138
        Charles E. Stoecker, Florida Bar No. 92560
        1 East Broward Boulevard, Suite 1400
        Fort Lauderdale, FL 33301
        Tele:(954)356-2528; Fax:(954) 208-7517
        mfarach@mcglinchey.com
        cstoecker@mcglinchey.com
        ***Attorneys for Plaintiff Transportation Alliance Bank***