UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TRANSPORTATION ALLIANCE BANK,
INC.,

      Plaintiff,

v.                                Case No.:   2:18-cv-499-FtM-66MRM

PEEWEE'S HAULING, INC., PEEWEE'S
SERVICES CORP., MARLOWE F.
VARGAS, SHANNON GEORGE and
VICTOR GEORGE,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Before the Court are two motions in which Plaintiff Transportation Alliance Bank, Inc. ("TAB") seeks default judgment against Defendants Victor George ("V. George"), PeeWee's Hauling, Inc. ("PHI"), PeeWee's Services Corp. ("PSC"), Marlowe F. Vargas, and Shannon George ("S. George") (all but V. George, collectively the "PeeWee Defendants").  (Docs. 101, 116).  Because TAB seeks to hold *all* Defendants jointly and severally liable for its damages arising from facts set forth in its Fourth Amended Complaint (the "Complaint") (Doc. 86), the Undersigned consolidates the motions and addresses them both here.  For the reasons set forth below, the Undersigned recommends that TAB's Motions (Docs. 101, 116) be **GRANTED IN PART** and **DENIED IN PART**.

## PROCEDURAL BACKGROUND

The Undersigned begins with a procedural summary.  TAB first moved for a clerk's default against the PeeWee Defendants after it filed its Third Amended Complaint.  (Docs. 39, 41).  The PeeWee Defendants then, through counsel, answered the Third Amended Complaint

causing the Court to deny TAB's motion as moot.  (Doc. 58).  Later, TAB filed the Complaint at issue naming V. George along with the PeeWee Defendants.  (Doc. 86).

While the PeeWee Defendants answered the Complaint, V. George did not and TAB moved for a clerk's default against V. George.  (Docs. 95, 97).  The Court granted that motion and the clerk entered a default against V. George.  (Doc. 99).  As a result, TAB moved for default judgment against V. George before it obtained a clerk's default against the remaining PeeWee Defendants.  (Doc. 101).

But after the PeeWee Defendants answered the Complaint, their counsel sought to withdraw and the Court granted leave.  (Docs. 100, 102).  In doing so, the Court required the corporate Defendants (PHI and PSC) to retain counsel pursuant to M.D. Fla. R. 2.03(e) no later than March 2, 2020.  (Doc. 102 at 3).[1]  The Court also required Vargas and S. George either to retain new counsel or file the appropriate notices representing they intended to proceed *pro se*. (*Id.*).  Relevantly, the Court admonished the PeeWee Defendants that failure to comply with the order may subject them to default or other sanctions.  (*Id.*).

Despite these directions, the PeeWee Defendants failed to comply at all with the Court's order.  TAB, as a result, moved for the entry of a clerk's default against the PeeWee Defendants and sought sanctions in the form of striking their Answer.  (Doc. 104).  The Undersigned issued a Report and Recommendation recommending that TAB's motion be granted in full.  (Doc. 106). The presiding United States District Judge adopted the Report and Recommendation, granted the entry of a clerk's default, and struck the PeeWee Defendants' Answer.  (Doc. 109).  TAB then moved for default judgment against the PeeWee Defendants.  (Doc. 116).

---

[1] M.D. Fla. R. 2.03(e) states that "a corporation may appear and be heard only through counsel admitted to practice in the Court pursuant to Rule 2.01 or Rule 2.02."

## FACTUAL BACKGROUND

A review of the factual allegations of TAB's Complaint (Doc. 86) is necessary.  TAB and PHI—with PHI acting through its President, S. George—executed a Promissory Note (the "Note") for $193,661 in favor of TAB.  (*Id*. at 3).[2]  To secure the Note, the parties also executed a Commercial Security Agreement granting TAB an interest in a tractor truck acting as collateral for the Note.  (*Id*.).  The parties reaffirmed their obligations under the documents under a Business Loan Agreement.  (*Id*.).  Finally, S. George and TAB executed a Commercial Guaranty making S. George liable for any default by PHI on the Note.  (*Id*. at 4).  These documents constitute the "loan" agreement.  (*See id.*).

As part of the loan and to induce TAB to extend credit to PHI, PHI agreed to register TAB's security interest in the truck as a lien on the Florida title to the truck after PHI acquired the truck.  (Doc. 86 at 4).  In fact, the parties executed a Power of Attorney authorizing TAB as its lawful attorney-in-fact to act for PHI in applying for an original or duplicate title certificate and to register, transfer, or record a lien on the title.  (*Id*. at 3).

PHI was to purchase the truck from Nuss Truck Group, Inc. ("Nuss") and record TAB's security interest on the title as a lien.  (Doc. 86 at 4).  S. George, V. George, and Vargas began negotiating with Nuss and informed Nuss of TAB's interest arising from the loan.  (*Id*.).  And when Nuss transferred title to PHI, TAB was in fact listed as the lienholder on the transfer form.  (*Id*.).  However, after receiving the first title with TAB's interest, the three then requested a duplicate transfer title from Nuss that *did not* include TAB as a lienholder.  (Doc. 86 at 4).

---

[2] To add clarity to the parties, TAB represents that "V. George is [S.] George's father and that V. George and Vargas are currently engaged to be married."  (Doc. 116 at 3 n.2).

Defendants then enacted a scheme to conceal TAB's interest in the collateral.  To begin, PHI registered the duplicate transfer title from Nuss—the one that omitted TAB's lien interest in the collateral—with the State of Florida.  (Doc. 86 at 4).  Then, PHI acting through Vargas, applied for a certificate of title with Florida's Department of Highway Safety and Motor Vehicles but intentionally failed to disclose TAB's lien information despite the certificate requesting this information specifically.  (*Id*. at 5).  The Department issued PHI a certificate of title that did not name TAB as a lienholder.  (*Id*. at 6).  TAB represents that it was around this time that PHI defaulted on the loan and S. George failed to repay the Note amount.  (*See id*. at 8).

After becoming delinquent on the Note, TAB represents that PHI and the PeeWee Defendants created a new corporate entity: PSC.  (Doc. 86 at 6).  PSC shares the same principal address and mailing address with PHI and Vargas, the current President of PHI, is also PSC's Chief Financial Officer.  (*Id*.).  PHI then, without informing TAB or its counsel, transferred the collateral to PSC in violation of the parties' loan agreement.  (*Id*.).  During the transfer, PHI once again acting through Vargas applied for another certificate of title and again failed to list TAB's security interest in the truck on that title.  (*Id*. at 7).  Once PHI obtained this title, free from any reference to TAB's interest, PHI transferred the title to PSC.  (*Id*.).

TAB alleges Defendants orchestrated this plot to avoid repaying the loan.  (Doc. 86 at 8). As S. George, V. George, and Vargas had negotiated with Nuss for the original title containing TAB's security interest, the three were certainly aware of TAB's interest as a result of the loan and also knew that PHI was in default for delinquent payments because of their positions with PHI.  (*Id*.).  They then went to great lengths to erase any documentation of TAB's interest in the collateral on the truck's title.  (*Id*.).  As PHI and PSC shared the same executive officer, PSC was also aware of TAB's interest in the collateral, lack of title documentation notwithstanding.  (*Id*.).

Moreover, TAB alleges PSC was not a *bona fide* purchaser because it did not pay fair market value for the truck to PHI.  (*Id*.).  TAB now believes the truck is in danger of destruction or concealment and does not know the exact location of the collateral but believes that because both PSC and PHI are in Collier County, Florida, there is reason to believe the truck is also in Collier County.  (*Id*.).[3]

As a result of its delinquent payments and unauthorized transfer of collateral, PHI has defaulted on the Note.  (Doc. 86 at 9).  S. George has also defaulted under the Commercial Guaranty by failing to make good PHI's debt obligations.  (*Id*.).  TAB argues that because of these defaults, and Defendants' fraudulent scheme, all are jointly and severally liable for the principal amount of the loan, applicable late fees, and accrued interest under the agreement.  (*Id*.; *see also id*. at 16).

## LEGAL STANDARD

The Court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear pursuant to Federal Rule of Civil Procedure 55(b)(2).  *Cohan v. Sparkle Two, LLC*, 309 F.R.D. 665, 666 (M.D. Fla. 2015); *see also Directv, Inc. v. Griffin*, 290 F. Supp. 2d 1340, 1343 (M.D. Fla. 2003).  The effect of the entry of a default is that all factual allegations in the complaint are taken as true, save for the amount of unspecified damages. *Cohan*, 309 F.R.D. at 666 (citing *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987)). "[I]f liability is well-pled in the complaint, it is established by the entry of a default."  *Id.*

---

[3] As the Undersigned discusses below, TAB in a motion filed after its default judgment represents that "the collateral was sold to a third party."  (*See* Doc. 120 at 1).  Thus, while PSC may have possessed the truck at the time of TAB's default judgment motion, it is unclear if that is still accurate.

Default judgment, however, may only be entered "if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for entry of a default judgment." *Id.* (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).[4]  While the Court "must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions." *De Lotta v. Dezenzo's Italian Rest., Inc.*, No. 6:08-cv-2033-ORL-22-KRS, 2009 WL 4349806, at *2 (M.D. Fla. Nov. 24, 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Defendants are not held to admit facts that are not well-pled or to admit conclusions of law.  *Nishimatsu*, 515 F.2d at 1206.

To be well-pled, a complaint does not need detailed factual allegations, but a complaint must provide the grounds for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Iqbal*, 556 U.S. 678.  This standard—derived from motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)—is "equally applicable to a motion for default judgment."  *Cohan*, 309 F.R.D. at 667.  Thus, a complaint requires more than labels and conclusions, and "a formulaic recitation of the elements of a cause of action will not do."  *Iqbal*, 556 U.S. at 678.  A complaint will not suffice if "it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.*  "The well-pled allegations must nudge the claim 'across the line from conceivable to plausible.'"  *De Lotta*, 2009 WL 4349806, at *2 (quoting *Twombly*, 550 U.S. at 570).

Therefore, the appropriate focus is whether TAB's Complaint provides the grounds for relief of each Count it alleges.

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

**DISCUSSION**

I.     **Default Judgment**

As an initial matter, the Undersigned notes that TAB does not seek default judgment for

every claim asserted in its Complaint.  For example, the Complaint includes Nine Counts:  (1)

Foreclosure of Security Interest; (2) Breach of Note; (3) Prejudgment Attachment; (4)

Conversion; (5) Fraudulent Conveyance; (6) Constructive Trust; (7) Breach of Commercial

Guaranty; (8) Fraud; and (9) Prejudgment Writ of Replevin.  (Doc. 86 at 9, 10, 11, 13, 14, 15).

Yet in its motions, TAB does not seek—nor include any discussion—regarding Counts III or IX.

(*See* Docs. 101, 116).[5]  Thus, the Undersigned will only discuss those causes of action that are in

both TAB's Complaint and its motions.

Before the Undersigned turns to these claims, a brief discussion regarding the applicable

substantive law is appropriate.  Normally, a federal court sitting in diversity, such as this one,

applies the substantive law of the forum state; in this case, Florida.  *See Erie R.R. Co. v.

Tompkins*, 304 U.S. 64 (1938).  Yet the Note and Commercial Guaranty contain choice of law

provisions making the substantive law of Utah applicable insofar as the breach of those

agreements is concerned.  (*See* Docs. 86-1 at 2, 86-5 at 3).  Under Florida law, "an agreement

between parties to be bound by the substantive laws of another jurisdiction is presumptively

valid, and this Court will enforce a choice-of-law provision unless applying the chosen forum's

law would contravene a strong public policy of" Florida.  *Am. Home Assur. Co. v. Weaver

Aggregate Transport, Inc.*, 84 F. Supp. 3d 1314, 1319 (M.D. Fla. 2015).  The Undersigned finds

---

[5] TAB may have intentionally omitted Count IX because it had obtained a prejudgment writ of
replevin from this Court.  (Doc. 24).  Also, TAB has moved for a second, amended writ of
replevin against a third party.  (Doc. 120).  That matter is also before the Undersigned and will
be addressed in a separate, forthcoming order.  *See* M.D. Fla. R. 6.01(19).

that applying Utah law to the matter *sub judice* does not contravene any Florida public policy and so Utah law will govern the breach of contract claims where applicable.  Put differently, the Undersigned applies Utah law to Counts II and VII concerning the breaches of contract but applies Florida law to the remaining counts, including Count I seeking judicial foreclosure.[6]

## A.    Counts I, II, and VII

The Undersigned addresses these claims together, because resolving Count I necessarily turns on PHI's and S. George's alleged breaches in Counts II and VII.  Count I seeks foreclosure on the collateral as a result of PHI and S. George's respective breaches of the Note and Commercial Guaranty as TAB sets forth in Counts II and VII.  (Doc. 86 at 9, 10, 15).

TAB is entitled to the relief it seeks.  Both Florida and Utah have adopted Article Nine of the Uniform Commercial Code ("UCC") and recognize that a creditor who holds a security interest in personal property is entitled to judicial foreclosure.  *See* Fla. Stat. § 679.601(1)(a); *see also* Utah Code Ann. § 70A-9a-601(1)(a).  However, because TAB moves for foreclosure in Florida, and the collateral is also presumably in this state, the Undersigned will discuss Florida's approach to judicial foreclosure while applying Utah law to the alleged breaches of contract precipitating foreclosure.  TAB must show "that it is the holder of a security interest in the collateral and that it is the holder of the note that is secured by such interest."  *PNC Bank, N.A. v. Kimbrough & Assocs., LLC*, No. 6:13-cv-1558-Orl-28KRS, 2015 WL 327533, at *8 (M.D. Fla. Jan. 23, 2015) (citing *Lizio v. McCullom*, 36 So. 3d 927, 929 (Fla. 4th DCA 2010)).  TAB "must also show that the debtor defaulted on the terms of the note."  *Id*.

---

[6] In its motion, TAB appears to agree, stating:  "[F]or purposes of the relief requested in the Complaint, including amounts owed and recognition of Plaintiff's security interests, rights, and remedies under the Loan Documents, the laws of the State of Utah shall apply.  For all claims which exist outside the parties' contractual relationship, federal and Florida law apply."  (Doc. 116 at 9-10).

Here, TAB attaches to its Complaint both the parties' executed Note and Commercial Security Agreement.  (Docs. 86-1, 86-2).  These documents, together, show that TAB is the holder of a note secured by a "2016 Mack GU713 Tractor (VIN 1M2AX04C4GM028158)."  (Doc. 86-2 at 1).  Because TAB holds a security interest in the collateral it seeks to foreclose, and that collateral secures the parties' Note, the only question is whether PHI and S. George breached their respective agreements.

Under Utah law, the "elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *America W. Bank Members, L.C. v. State*, 342 P.3d 224, 230-31 (Utah 2014).  Here, turning first to PHI, one need only look to its obligations under the Note.  (*See* Doc. 86-1).  There can be no conclusion other than that PHI and TAB were in an enforceable, valid contract.  TAB performed under the Note by extending PHI $193,661.  (Doc. 86 at 3).  PHI then defaulted on the loan when it fell behind on payments and made an unauthorized transfer of the collateral to PSC thereby breaching the contract.  (*Id.* at 9).  Thus, the Undersigned finds PHI breached the Note.

TAB's claim against S. George warrants further discussion, however, as S. George is not the debtor, but the guarantor and Utah law notes this distinction.  Whether a creditor (such as TAB) can pursue a guarantor (such as S. George) before—or in this case, simultaneously as—it pursues a debtor depends on whether the guarantor made an "absolute guaranty." *Valley Bank and Trust Co. v. Rite Way Concrete Forming, Inc.*, 742 P.2d 105, 108 (Utah Ct. App. 1987).  "A guaranty of the payment of an obligation, without words of limitation or condition, is construed as an absolute or unconditional guaranty." *Id.* (quoting 38 Am. Jur. 2d *Guaranty* § 21 (1968)).  Here, the Commercial Guaranty states in no uncertain terms:

> Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender . . . This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness.

(Doc. 86-5 at 1).  Thus, the Undersigned finds that S. George made an "absolute guaranty" and TAB may pursue either S. George or PHI.

Under the Commercial Guaranty, S. George had an obligation to perfect any default by PHI on the Note.  (*See* Doc. 86-5).  The Complaint alleges that when PHI became delinquent on payments, S. George did not cure this defect and made no payments on the Note to TAB.  Therefore, S. George also breached a valid contract with TAB.

In sum, TAB is entitled to judicial foreclosure of the collateral under applicable law because it holds a security interest in the truck, the truck secures the Note, and PHI and S. George breached the Note and Commercial Guaranty.  Accordingly, the Undersigned recommends default judgment against PHI under Counts I and II, and against S. George under Count VII.

## B.    Count IV

Count IV alleges conversion against PHI, S. George, and Vargas for their role in transferring the collateral from PHI to PSC.  (Doc. 86 at 12).  "Under Florida law, the elements of conversion are (1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with [its] ownership therein."  *Joe Hand Promotions, Inc. v. Creative Entm't, LLC*, 978 F. Supp. 2d 1236, 1241 (M.D. Fla. 2013).  Additionally, "a lienholder is considered to be an 'owner' for the purposes of conversion if [it] has a present right of possession."  *Bel-Bel Intern. Corp. v. Community Bank of Homestead*, 162 F.3d 1101, 1108 (11th Cir. 1998).  So, the

appropriate question is what interest TAB held in the collateral when PHI transferred the same to PSC.

As the Complaint sets forth, TAB at first held a security interest in the collateral.  But, under the Commercial Security Agreement, this interest became possessory when PHI became delinquent on its Note payments.  (*See* Doc. 86-2 at 3).  The Complaint also alleges that PHI transferred the collateral to PSC after it defaulted or, in other words, after TAB's interest became possessory.  Because of this possessory interest, the Undersigned finds that TAB has standing as an "owner" to bring its conversion claim.

Here too the Complaint alleges sufficient facts entitling TAB to default judgment under Count IV.  TAB had a present right of possession in the collateral because of PHI and S. George's defaults on the loan.  The PeeWee Defendants exercised control over the truck when they sold it to PSC, without TAB's consent, for below fair market value.  That control was wrongful because, under the terms of the parties' agreement, the three did not have the unilateral right to sell the collateral and certainly had no right to hide TAB's interest from the truck's title. TAB now suffers harm because PHI and S. George refuse to pay the loan amount and TAB cannot locate and reclaim the collateral securing the Note.  Thus, the Undersigned recommends that the entry of a default judgment for conversion against PHI, S. George, and Vargas is appropriate under Count IV.

## C.     Count V

Next, TAB alleges the PeeWee Defendants violated Fla. Stat. § 726.105, otherwise known as Florida's Uniform Fraudulent Transfer Act ("FUFTA").  (Doc. 86 at 13).  "Under [FUFTA] a creditor may avoid, or rescind, a transfer of assets made from a debtor to a transferee

if the transfer was fraudulent." *Sallah v. Worldwide Clearing LLC*, No. 10-62264-Civ, 2012 WL 399209, at * 2 (S.D. Fla. Feb. 7, 2012) (citing Fla. Stat. § 726.108(1)(a)).

A transfer is fraudulent as to a creditor when the debtor made the transfer:  (a) with actual intent to hinder, delay, or defraud any creditor of the debtor; or (b) without receiving a reasonably equivalent value in exchange for the transfer, and the debtor (1) was engaged in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction or (2) intended to incur, believed, or reasonably should have believed that it would incur debts beyond its ability to pay as they became due.  Fla. Stat. § 726.105(1)(a)-(b).  In its motion, TAB represents that it is pursuing the actual fraud provision of FUFTA, alleging "PHI transferred the collateral to PSC . . . with the clear intent to defraud TAB."  (Doc. 116 at 15).

The Eleventh Circuit has explained that a claim of actual fraud under the FUFTA requires:  "[1] a creditor to be defrauded, [2] a debtor intending fraud, [and] [3] a conveyance of property which is applicable by law to the payment of the debt due."  *Wiand v. Lee*, 753 F.3d 1194, 1199-1200 (11th Cir. 2014).  In determining whether an obligor intended to defraud a creditor when making the transfer, "courts look to the statutory 'badges of fraud,' such as whether, for example, the transfer was to an insider, the debtor retained control of the property after the transfer, the transfer was of substantially all of the debtor's assets, or the debtor was insolvent or became insolvent shortly after the transfer was made."  *Id*. at 1200; *see* Fla. Stat. § 726.105(2).

The facts in TAB's Complaint satisfy each element.  TAB was PHI's creditor under the Note and held an interest in the collateral securing the Note.  It is unassailable that the truck was applicable by law to the payment of the debt PHI and S. George owed TAB under the Note.  (*See*

Doc. 86-5).  And here, there are many allegations supporting an inference that the PeeWee Defendants fraudulently transferred the collateral to avoid repayment of the loan or repossession of the truck.

Chief among these inferences is that the PeeWee Defendants, despite being fully aware of TAB's security interest—and actually registering it on the first title from Nuss—went to great lengths to ensure that the truck's subsequent titles omitted any reference to TAB's lien on the collateral.  Then, PHI and S. George defaulted on their payments.  Rather than tender the collateral to TAB, the Complaint alleges the PeeWee Defendants once again acquired a title devoid of TAB's security interest and then transferred the truck, below market value, to a corporation the PeeWee Defendants created for this specific purpose.  At no point after the transfer did PHI or S. George correct the default or pay their debts to TAB.  Inasmuch, the Undersigned finds that the PeeWee Defendants fraudulently transferred the collateral to PSC in violation of the FUFTA and default judgment is appropriate under Count V.

### D.      Count VI

In Count VI, TAB seeks a constructive trust.  (Doc. 86 at 14).  A constructive trust is an equitable remedy "to prevent the unjust enrichment of culpable parties [where] [t]he beneficiary of the trust is entitled to have [its] original interest restored in [its] property which was wrongfully taken."  *Bender v. CenTrust Mortg. Corp.*, 51 F.3d 1027, 1029 (11th Cir. 1995).  "The imposition of a constructive trust, however, is available only when there is no adequate remedy at law."  *CSC Holdings, Inc. v. Kimtron, Inc.*, 47 F. Supp. 2d 1361, 1365 (S.D. Fla. 1999) (citing *Mitsubishi Int'l v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1518 (11th Cir. 1994)); *see also Bender*, 51 F.3d at 1030.

The Undersigned finds that TAB's alternative remedy at law, namely money damages, makes the imposition of a constructive trust improper.  While TAB need not allege that there is no adequate remedy at law to seek a constructive trust, *see Silver v. Digges*, No. 6:06-cv-290-Orl-19DAB, 2006 WL 2024935, at *3 (M.D. Fla. July 17, 2006), the loan agreements and TAB's prayer for relief sufficiently demonstrate that TAB has an adequate remedy at law in the form of its money damages.

Lastly, one other reason makes the application of a constructive trust problematic.  After filing its motions for default judgment, TAB moved for an amended writ of replevin.  (*See* Doc. 120).  In that motion, TAB represents that Defendants sold the collateral to a third party and while the third party may also not be a *bona fide* purchaser, it is unclear if Defendants even still possess the collateral.  (*See id*. at 1).  A default judgment resulting in the imposition of a constructive trust is inappropriate given that the whereabouts of the collateral are not known.

In sum, because TAB has an adequate remedy at law in the form of money damages, the Undersigned recommends denying TAB's request for a constructive trust.

### E.    Count VIII

TAB's final claim alleges fraud as to all Defendants, including V. George.  (Doc. 86 at 15).  Under Florida law, "[t]he essential elements of a fraud claim are:  (1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induces another's reliance; and (4) consequent injury by the other party acting in reliance on the interpretation."  *Serefex Corp. v. Hickman Holdings, LP*, 695 F. Supp. 2d 1331, 1342 (M.D. Fla. Feb. 23, 2010) (citing *Ward v. Atlantic Sec. Bank*, 777 So. 2d 1144, 1146 (Fla. 3d DCA 2001)).

As the Undersigned found in TAB's FUFTA claim *supra*, the Complaint is replete with factual allegations of Defendants' fraudulent actions. The Complaint sets forth that PHI's representation that it would record TAB's security interest as a lienholder on the collateral's title was material in inducing TAB extending PHI the loan. Moreover, at all times, Defendants were aware of TAB's security interest because they did, in fact, register TAB as a lienholder on the first title from Nuss. But after that point, Defendants went to great lengths to erase all reference of TAB's interest in the collateral and carried out a scheme that frustrated TAB's ability to recoup the collateral as security for PHI's delinquent payments. Lastly, as explained in this Report and Recommendation, the Complaint alleges all Defendants worked in tandem—whether through acquiring title, applying for certifications, forming another corporation, or actually transferring the collateral—and thus all are liable for fraud against TAB.

To reiterate, PHI acting through Vargas represented that it would register TAB's security interest in the collateral as a lien on the truck's title. S. George also represented that she would guarantee any default on behalf of PHI. These representations were material for TAB extending PHI a loan. Yet at the earliest opportunity, S. George, V. George, and Vargas began acquiring duplicate titles to avoid repayment of the Note after PHI became delinquent on payments and S. George failed to cover those payments. Defendants' actions strongly support an inference that they had no intention of actually putting forth the truck as collateral as evidenced by their title scheme. For these reasons, the Undersigned recommends entering a default judgment as to Count VIII of the Complaint against all Defendants.

The Undersigned now turns to the issue of TAB's damages.

## II.      Damages

Once liability is established, federal courts then address the terms of the judgment. *Cohan v. Sparkle Two, LLC*, 309 F.R.D. 665, 667 (M.D. Fla. 2015).  "A default judgment must not differ in kind from or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  Moreover, "[i]f unspecified monetary damages are sought, the party moving for default judgment has the burden to prove the unliquidated sums in a hearing on damages or otherwise."  *Cohan*, 390 F.R.D. at 667 (citing Fed. R. Civ. P. 55(b)(1)-(2)).  Under Rule 55(b)(2), "[t]he court may conduct hearings . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages."  Fed. R. Civ. P. 55(b)(2)(B).  "The court has 'an obligation to assure that there is a legitimate basis for any damage award it enters, and to assure that damages are not awarded solely as the result of an unrepresented defendant's failure to respond.'"  *Lofrisco v. Gulf Coast Health Care*, No. 8:13-cv-3159-T-36MAP, 2014 WL 4674323, at *1 (M.D. Fla. Sept. 15, 2014) (quoting *Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003)).  "Well-pled allegations as to damages, however, are also admitted by a default."  *Giovanno v. Fabec*, 804 F.3d 1361, 1366 (11th Cir. 2015) (citing *SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005)).

"Still, default judgment may not be entered without a hearing on damages unless 'the amount claimed is [] capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits.'"  *Almeira v. GB House, LLC*, No. 8:14-cv-00045-T-27AEP, 2014 WL 1366808, at *1 (M.D. Fla. Apr. 7, 2014) (quoting *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)).  Stated differently, for the Court to not hold a hearing, "[Plaintiffs'] damages should be readily provable by reference to objective documentation" from "sworn, authenticated evidence."  *Id.* (quoting

*Natures Way Marine, LLC v. N. Am. Materials, Inc.*, No. 08-0005-WS-B, 2008 WL 801702, at *4 (S.D. Ala. Mar. 24, 2008)).

TAB asks the Court to enter default judgment as follows:  (a) $168,202.48 for the outstanding principal amount; (b) $73,756.79 in accrued interest as of April 20, 2020 plus interest that has and continues to accrue at the rate of $84.10 per day through the date of final judgment; (d) $10,976.80 in late fees and early termination fees; (e) statutory post-judgment interest under 28 U.S.C. § 1961; (f) TAB's reasonable attorneys' fees and costs; and (g) judicially recognizing TAB's security interest in the collateral.  (Doc. 116 at 18).  Thus, TAB seeks a sum certain of $252,936.07 in money damages, plus fees, costs, and interest.  As the Undersigned explains below, the Court need not hold a hearing as to TAB's damages because they are capable of mathematical computation and documentary evidence support the figure.

### A.    Sum Certain

The Undersigned first turns to PHI's obligations under the Note in the event of a default. (Doc. 116-1 at 6).  Any payments made on the Note are applied first to any unpaid collection cost, then to any late charges, and then to any accrued, unpaid interest, and then finally to the outstanding principal.  (*Id.*).  The Note also contains a penalty of 5% of any late payment or $25, whichever is greater.  (*Id.*).  After a default, TAB may accelerate any unpaid principal and accrued interest and this sum will continue to accrue interest at a rate of 18% per year.  (*Id.*).[7]

In support of its damages, TAB attaches to its motion the Affidavit of David M. Da Visio.  (Doc. 116-1 at 1).  Mr. Da Visio attests he is TAB's Special Assets Relationship Manager

---

[7] Under Utah law, courts may "award prejudgment interest at a rate chosen by the parties if the parties had previously agreed that the interest would be applied to the amounts for which judgment is awarded."  *Brady v. Park*, 445 P.3d 395, 419 (Utah 2019); *see also* Utah Code Ann. § 15-1-1 (West 2019).

and the custodian of records for the loan documents at issue. (*Id*. at 1-2). Mr. Da Visio, furthermore, asserts that PHI and S. George defaulted on the Note on June 2, 2017. (*Id*. at 4). Lastly, Mr. Da Visio proffers a "true and correct copy of TAB's business records which calculates the amounts owed under the Loan" attached as Composite Exhibit 6. (*Id*.).[8]

A review of the Composite Exhibit shows that PHI and S. George defaulted on June 2, 2017 but made a final payment on December 4, 2017. (Doc. 116-1 at 26). The December 4 payment, however, went solely to accrued interest and TAB's business records reflect no payment thereafter. (*See* Doc. 116-1 at 28). Upon consideration of Mr. Da Visio's Affidavit, the loan documents, and TAB's business records as explained in the Composite Exhibit, the Undersigned finds that TAB's request for a sum certain is well documented and the Court need not conduct a hearing about damages in this regard.

For these reasons, the Undersigned recommends that the Court hold all Defendants liable for the following sums:  (a) principal in the amount of $168,202.48; (b) $73,756.79 in accrued interest as of April 20, 2020 and thereafter at a rate of $84.10 per day until the entry of final judgment; (c) $10,976.80 in late fees and minimum interest charges; and (d) post-judgment interest as applicable under 28 U.S.C. § 1961.  The Undersigned now addresses TAB's remaining requests.

## B.    Attorneys' Fees

TAB also moves the Court for the issuance of attorneys' fees and costs.  Litigants "are ordinarily required to bear their own attorney's fees" absent express statutory authority or an

---

[8] The Undersigned notes a discrepancy between the Motion and Mr. Da Visio's Affidavit.  Of the $10,976.80 TAB seeks in fees, in the Motion TAB characterizes $1,777.02 of that sum as "early termination fees." (Doc. 116 at 8 n.4).  Mr. Da Visio, however, refers to the same sum as a "minimum interest charge." (Doc. 116-1 at 4 n.2).

enforceable contract. *Buckhannon Bd. & Care Home v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 602 (2001); *see also Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 257 (1975). The same is true for claims brought under Florida law. *See Price v. Tyler*, 890 So. 2d 246, 250 (Fla. 2004) ("Under Florida law, each party is responsible for its own attorneys' fees unless a contract or statute provides otherwise."). Utah also follows this approach in that a "court may award costs and attorney fees to [the prevailing party] in a civil action based upon any promissory note [or] written contract" provided that the promissory note or written contract allows a party to recover attorney fees. *Hardy v. Montgomery*, 428 P.3d 78, 88 (Utah Ct. App. 2018) (citing Utah Code Ann. § 78B-5-826 (West 2020)).

Here, both the Note and the Commercial Guaranty expressly provide for attorneys' fees and costs. (Doc. 116-1 at 6, 21). Nevertheless, TAB's counsel has provided no documentation allowing the Court to determine the reasonableness of an award of fees and costs. In addition, only PHI and S. George are parties to those contracts with TAB, meaning that the provisions entitling TAB to fees and costs do not bind V. George, Vargas, and PSC. TAB, furthermore, has cited no authority for the proposition that the Court should hold V. George, Vargas, and PSC jointly and severally liable for TAB's attorneys' fees and costs.[9] Accordingly, the Undersigned recommends that the Court: (1) deny TAB's request for fees and costs against PHI and S. George without prejudice to TAB's ability to renew its motion supported by adequate documentation as to the appropriate amount of fees and costs to be awarded; and (2) deny the request as to V. George, Vargas, and PSC.

---

[9]The FUFTA also has no provision that explicitly provides for an award of attorneys' fees. *See* Fla. Stat. § 726.101, *et seq.*; *see also Euro RSCG Direct Response, LLC v. Green Bullion Fin. Servs.*, 872 F. Supp. 2d 1353, 1364 (S.D. Fla. 2012) (striking attorney fee demand because FUFTA lacks a fee provision).

### C.    TAB's Equitable Relief

In addition to the above legal damages, TAB seeks a foreclosure judgment against PHI so it can sell the collateral (Doc. 86 at 10) and asks that the Court:

> Recogniz[e] [TAB's] security interest in the Collateral, as defined in the Security Agreement and [TAB's] rights and remedies in connection therewith as provided for under the Security Agreement and the Loan Documents, including requiring that the Defendants immediately produce the Collateral as is required in the Security Agreement so that the writ of replevin that this Court previously issued can be executed.

(Doc. 116 at 18).

Turning first to the foreclosure issue, the Court faces several challenges in formulating an adequate foreclosure judgment. The first concern is whether TAB benefits from an impermissible windfall if it simultaneously executes on its money damages *and* forecloses the collateral. In a sense, the value of both remedies may exceed what TAB is entitled to under the Note. However, at least one Florida appellate court has addressed this issue.

In *Spellman v. Independent Bankers' Bank of Florida*, 161 So. 3d 505 (Fla. 5th DCA 2014), Florida's Fifth DCA held that a plaintiff creditor was entitled "to a money judgment for the full amount of the indebtedness, and [was] not restricted to seeking a deficiency judgment." *Id*. at 508. In analyzing Article 9 of the UCC—codified as Fla. Stat. § 679.609(1)—the court in *Spellman* found that a plaintiff creditor is not required to elect a remedy but may "pursue a judgment against [the defendant debtor] for the default while simultaneously repossessing the [collateral]." *Id*. The court found that under § 679.601(3), a creditor's rights are "cumulative and may be exercised simultaneously." *Id*. Thus, the court in *Spellman* held that a plaintiff

creditor "may obtain a money judgment for the full amount due and then proceed to dispose of the collateral." *Id*. at 508-509 (collecting cases).[10]

But while TAB is legally entitled to default judgment for its foreclosure claim, the Court may wish to delay execution upon the same for other reasons also implicating TAB's request that the Court order Defendants to produce the collateral. Sometime after TAB filed its motions for default judgment, it also moved to amend its writ of replevin. (Doc. 120).

In that motion, TAB represents that it could not execute its original writ (Doc. 24) because Defendants concealed the collateral. (Doc. 120 at 1). TAB then states Defendants sold the collateral to a third party and that neither PHI nor PSC is in possession of the truck. (*Id*. at 1-2). In that motion, TAB requests that the Court issue a new writ directed towards an individual who bought the truck for what TAB alleges was "well below market value." (*Id*. at 6).

Without reaching the merits of that motion, the representations therein complicate any order this Court can enter now, concerning default judgment. For example, TAB has not cited any authority or offered any discussion regarding how the Court should most effectively conduct a foreclosure sale on the collateral when the current whereabouts of the collateral are not clear. Nor has TAB cited any authority or provided any discussion concerning the futility of the Court ordering Defendants to produce a collateral that is no longer in Defendants' possession. For these reasons, the Undersigned recommends that the Court allow TAB to execute its money

---

[10] In matters involving consumer loans, such as here, Utah also allows a creditor simultaneously to pursue a money judgment and foreclosure of the collateral. *See*, *e.g.*, *Peoples Fin. & Thrift Co. of Ogden v. Perry*, 516 P.2d 1400, 1402 (Utah 1973) (reversing trial court judgment requiring plaintiff "to make an election to either repossess the security or to reduce the promissory note to judgment" and finding plaintiff did not need to make such election); *see also* Utah Code Ann. § 70A-9a-601(3) (West 2020) ("The rights under Subsections (1) and (2) are cumulative and may be exercised simultaneously.").

judgment first, before pursuing its equitable remedies until such time TAB certifies to the Court that it has been unable to collect on the money judgment.

## CONCLUSION

Based upon the facts in TAB's well-pled Complaint, the Undersigned finds as follows. TAB is entitled to default judgment under Count I (Foreclosure of Security Interest), Count II (Breach of Note), Count IV (Conversion), Count V (Fraudulent Conveyance), Count VII (Breach of Commercial Guaranty), and Count VIII (Fraud).  Because TAB has an adequate remedy at law in the form of money damages, the Undersigned recommends denying default judgment as to Count VI, which seeks a constructive trust.

Further, the Undersigned finds that the Court should enter default judgment holding all Defendants jointly and severally liable for the following amounts:  (a) $168,202.48 for the principal due under the Note; (b) $73,756.79 in accrued interest as of April 20, 2020 with interest accruing at a rate of $84.10 per day until the date of final judgment; (c) late fees and a minimum interest charge of $10,976.80; and (d) post-judgment interest accruing at the applicable rate under 28 U.S.C. § 1961.  As to TAB's request for attorneys' fees and costs, however, the Undersigned finds that:  (1) TAB's request against PHI and S. George should be denied without prejudice to TAB's ability to renew its motion supported by adequate documentation as to the appropriate amount of fees and costs to be awarded; and (2) TAB's request for fees and costs against V. George, Vargas, and PSC must be denied.

Lastly, because it appears that PHI and PSC no longer possess the collateral, the Undersigned recommends delaying any execution of the default judgment on TAB's equitable claim (Count I) in favor of allowing it to pursue first its legal damages under the loan agreements.

Based upon the foregoing, the Undersigned **RESPECTFULLY RECOMMENDS** that:

1.  TAB's Motions for Default Judgment (Docs. 101, 116) be **GRANTED IN PART** and **DENIED IN PART** as set forth below.

    a.  The Court enter default judgment against PHI under Counts I and II;

    b.  The Court enter default judgment against S. George, PHI, and Vargas under Count IV;

    c.  The Court enter default judgment against the PeeWee Defendants under Count V;

    d.  The Court enter default judgment against S. George under Count VII; and

    e.  The Court enter default judgment against all Defendants under Count VIII.

2.  The Court award TAB the following amounts with all Defendants liable for said sum:

    a.  Principal in the amount of $168,202.48;

    b.  $73,756.79 in accrued interest as of April 20, 2020, with interest accruing at a rate of $84.10 per day through entry of final judgment;

    c.  Late fees and early termination fees in the amount of $10,976.80; and

    d.  Post-judgment interest accruing under 28 U.S.C. § 1961.

3.  The Court:  (1) deny TAB's request for fees and costs against PHI and S. George without prejudice to TAB's ability to renew its motion supported by adequate documentation as to the appropriate amount of fees and costs to be awarded; and (2) deny the request as to V. George, Vargas, and PSC.

4.      The Court recognize TAB as the holder and owner of the Commercial Security Agreement granting TAB a security interest in a 2016 Mack GU713 Tractor (VIN 1M2AX04C4GM028158).  (Doc. 86-2).

5.      The Court reserve ordering a judicial foreclosure sale of the collateral or requiring Defendants to produce the collateral until TAB certifies it has not or cannot execute on its money judgment.

6.      The Court deny the Motions for Default Judgment (Docs. 101, 116) to the extent that they seek any greater or different relief than recommended herein.

**RESPECTFULLY RECOMMENDED** in Chambers in Ft. Myers, Florida on July 29, 2020.

_____

MAC R. MCCOY

UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties